UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ALEXANDER ROMERO, an individual,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>    Defendants. | Case No.: 24-CV-1320 JLS (JLB)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND STRIKE PLAINTIFF'S COMPLAINT**<br><br>(ECF No. 5) |

    Presently before the Court is Defendant United States of America's Motion to Dismiss and Strike Plaintiff's Complaint ("Mot.," ECF No. 5). Plaintiff Michael Romero filed an Opposition to the Motion ("Opp'n," ECF No. 6). Defendant filed a Reply in support of its Motion ("Reply," ECF No. 7). The Court vacated oral argument on the Motion and took the matter under submission without oral argument. ECF No. 8. Having carefully reviewed Plaintiff's Complaint ("Compl.," ECF No. 1), the Parties' arguments, and the law, the Court **GRANTS** Defendant's Motion to Dismiss as to Plaintiff's fourth, fifth, and sixth causes of action.

/ / /

/ / /

# FACTUAL BACKGROUND

Michael Romero is a United States citizen and resident of Chula Vista, California. Compl. ¶ 14. On August 12, 2023, Romero went through the San Ysidro Port of Entry ("SYPOE") on his way back home after visiting Tijuana, Mexico. *Id.* ¶ 15. At the SYPOE, Romero and his son were referred to secondary inspection, where Romero was asked to exit his vehicle and then subsequently "handcuffed in front of his son . . . and told he was under arrest for violating the terms of his federal supervised release." *Id.* ¶ 17. Upon his arrest, Romero explained that he was not on federal supervised release and told the officers that there must have been a mistake. *Id.* ¶ 19. Nevertheless, Customs and Border Protection ("CBP") agents kept him handcuffed to a bench for several hours and did not allow him any contact with his 15-year-old son. *Id.* ¶ 17. The next day, on August 13, 2023, Romero's son was picked up by his grandmother. *Id.* ¶ 18. During the length of his detention with CPB, Romero provided CBP with his "social security number, all of his IDs, his U.S. Passport Card, and every other form of identification that he had on him[.]" *Id.* ¶ 19. He was also fingerprinted by the agents. *Id.* The CBP officers failed to verify Romero's personal identification information, including his "date of birth, social security number, appearance, fingerprints, or any other biographical data," against the pending federal arrest warrant to determine if he was the subject of the arrest warrant. *Id.*

After five hours, U.S. Marshals ("USMS") arrived at the SYPOE to transfer Romero to jail. *Id.* ¶ 20. Again, Romero informed the USMS officers that he was not on federal supervised release and thus could not be the subject of a federal arrest warrant for violating the terms of his federal supervised release. *Id.* Again, the USMS officers did not verify "his date of birth, social security number, appearance, fingerprints, or any other biographical data." *Id.* ¶ 22. The USMS officers then transported Romero to Western Region Detention Facility ("GEO") in San Diego, California, where he was booked into custody. *Id.* ¶ 23. During both the booking process at GEO and the transport process from GEO to the federal courthouse, USMS officers did not verify Romero's identification against the federal arrest warrant. *Id.* ¶ 23.

On August 14, 2023, after being in custody for approximately 36 hours, Romero had a court appearance in front of a magistrate judge. *Id.* ¶ 24. At the hearing, the court ordered Romero detained and gave him a new court date of August 29, 2023, almost 15 days later. *Id.* ¶ 28. Following the court hearing, again the USMS officers did not verify Romero's identification. *Id.* On August 15, 2023, Plaintiff's appointed counsel learned of another individual with the same name as Plaintiff who was on supervised release after being convicted of transporting illegal aliens. *Id.* ¶ 31. That person had a different date of birth, fingerprints, and appearance. *Id.* After almost four days of detention, on August 16, 2023, the court granted an emergency request by Romero's court-appointed attorney for an identification hearing. *Id.* ¶ 33. At the hearing, the assistant United States attorney conceded that Romero was arrested in error, and subsequently, Romero was released from the courtroom to his mother. *Id.* At the time he was released, Romero had spent almost 90 hours detained. *Id.*

On July 26, 2024, Plaintiff filed the Complaint pursuant to the Federal Tort Claims Act ("FTCA") and the Fourth and Fifth Amendments to the United States Constitution. *See* Compl. The Complaint asserts six causes of action naming several defendants, including the United States, unknown CBP officers, and unknown USMS officers. On September 30, 2024, Defendant moved to dismiss Plaintiff's fifth cause of action for violation of the Bane Act (California Civil Code § 52.1) brought under the FTCA and Plaintiff's fourth and six causes of action for violations of the United States Constitution. *See* Mot. Defendant also moved to strike Plaintiff's request for attorney's fees under the Bane Act. *See id.* Plaintiff opposes the Motion to Dismiss with respect to the fourth and fifth causes of action but does not oppose the Motion to Dismiss with respect to the sixth cause of action or the Motion to Strike the request for attorney's fees. *See* Opp'n.

## LEGAL STANDARD

### I.  Federal Rule of Civil Procedure 12(b)(1)

Federal courts are courts of limited jurisdiction and thus have an obligation to dismiss claims for which they lack subject matter jurisdiction. *Demarest v. United States*,

718 F.2d 964, 965–66 (9th Cir. 1983). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). When a party files a 12(b)(1) motion, "there is a presumption of a lack of jurisdiction until the plaintiff affirmatively proves otherwise." *Orient v. Linus Pauling Inst. of Sci. & Med.*, 936 F. Supp. 704, 706 (D. Ariz. 1996). Under Federal Rule of Civil Procedure 12(b)(1), a party may raise by motion the defense that the complaint lacks subject matter jurisdiction via a facial or factual attack. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack, such as the one here, "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A court resolves a facial attack as it would a Rule 12(b)(6) motion: "Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient . . . to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

## II.   Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual

enhancement.'" *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

## DISCUSSION

### I.  Bane Act

Defendant moves to dismiss the fifth cause of action in Plaintiff's Complaint arguing the Court lacks subject matter jurisdiction to hear the claim brought under California's Bane Act, insofar as it is premised on alleged federal or state constitutional violations. Mot. at 5. Plaintiff contends that his Bane Act claim under the FTCA is based on a violation of Article I, Section 1 of the California Constitution, specifically Plaintiff's "right to be free from actions damaging his family integrity," and therefore satisfies the requirement of a constitutional rights violation for a Bane Act claim to proceed. Opp'n at 6.

When a party sues the federal government, the law on which such action is based must contain an explicit waiver of sovereign immunity for subject matter jurisdiction to exist, as "[i]t is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*,

463 U.S. 206, 212 (1983). A waiver of sovereign immunity must be "'unequivocally expressed' in the text of a relevant statute[,]" and "'[a]ny ambiguities in the statutory language are to be construed in favor of immunity.'" *Daniel v. Nat'l Park Serv.*, 891 F.3d 762, 768–69 (9th Cir. 2018) (first quoting *United States v. Bormes*, 568 U.S. 6, 9–10 (2012); and then quoting *Fed. Aviation Admin. v. Cooper*, 566 U.S. 284, 290 (2012)).

The FTCA is a limited waiver of sovereign immunity that expressly allows plaintiffs to seek damages against the United States for certain torts committed by federal employees. 28 U.S.C. § 2674. Specifically, the FTCA "provides a waiver of sovereign immunity for tortious acts of an agency's employees only if such torts committed in the employ of a private person would have given rise to liability under state law." *Pereira v. U.S. Postal Serv.*, 964 F.2d 873, 876 (9th Cir. 1992) (citing 28 U.S.C. § 1346(b)). Put differently, "[t]he FTCA incorporates the law of the state in which the tort is alleged to have occurred, in this case California[.]" *Xue Lu v. Powell*, 621 F.3d 944, 945–46 (9th Cir. 2010).

This means that a claim under the California Bane Act can, in theory, be brought under the FTCA. The Bane Act provides a civil cause of action "[i]f a person or person, whether or not acting under the color of the law, interferes by threat, intimidation or coercion, or attempts to interfere by threat, intimidation or coercion, with the exercise of enjoyment by any individual or individuals of rights secured by the constitution or laws of the United States, or of the rights secured by the Constitution or laws of" California. Cal. Civ. Code § 52.1(b). Accordingly, a plaintiff who alleges a claim pursuant to the Bane Act must show (1) a violation of a constitutional or statutory right (2) by intimidation, threats, or coercion. *Allen v. City of Sacramento*, 183 Cal. Rptr. 3d 654, 676 (2015). "A Bane Act claim is allowed to proceed as long as the claim relies on a proper constitutional claim." *Est. of Reyes Munoz v. United States*, No. 3:23-cv-1422-JES-SBC, 2024 WL 584430, at *2 (S.D. Cal. Feb. 13, 2024) (citing *Parra v. Hernandez*, No. 08cv0191-H (CAB), 2009 WL 3818376, at *3 (S.D. Cal. Nov. 13, 2009)).

Defendant contends that the Court lacks subject matter jurisdiction over Plaintiff's Bane Act claim to the extent the claim is "based on, or arise[s] out of, violations of the

United States Constitution" because the United States has not waived sovereign immunity. Mot. at 3. Defendant is correct—and Plaintiff appears to concede—that the Court lacks subject matter jurisdiction under the FTCA with respect to claims arising from interference with Plaintiff's federal constitutional rights. Opp'n at 6; *see F.D.I.C. v. Meyer*, 510 U.S. 471, 478 (1994) (holding that "the United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims"). This principle "extends to the Bane Act insofar as it serves as a conduit for claims based upon constitutional violations." *Voeltz v. United States*, No. 5:21-cv-00151-JWH-KKx, 2022 WL 17219511, at *3 (C.D. Cal. Apr. 14, 2022) (citing *Lewis v. Mossbrooks*, 788 F. App'x 455, 460 (9th Cir. 2019) (unpublished opinion)).

The question then becomes "whether a state constitutional violation may be the basis of a Bane Act claim against the United States brought under the FTCA[.]" *See Est. of Reyes Munoz*, 2024 WL 584430, at *2. This question is largely dependent on if the Bane Act claim is based solely on a state constitutional violation or if the claim is based on a state constitutional violation that overlaps with a federal constitutional right.

Defendant argues that a Bane Act claim premised on a state constitutional violation, particularly one that overlaps with a federal constitutional right, cannot proceed. Mot. at 4; Reply at 7. Plaintiff counters that the FTCA permits a Bane Act claim premised on a state constitutional violation and that "the right alleged [in the present case] has no federal equivalent" meaning "there is no overlap with any federal constitutional right." Opp'n at 6.

The Court agrees with Defendant's argument, concluding that a Bane Act claim cannot be brought against the United States based on a state constitutional violation that overlaps with the federal constitution. The Court rejects Plaintiff's assertion that no such overlap exists in this case.[1]

---

[1] Plaintiff further argues that some cases in this circuit have permitted Bane Act claims based solely on state constitutional violations. Plaintiff cites several cases to support this argument, including *Peralta v. United States*, 475 F. Supp. 3d 1086, 1098 (C.D. Cal. 2020), and *Reyes v. United States*,

When a plaintiff sues the United States for a violation of a state constitutional provision that overlaps with a federal constitutional provision, there is a risk of reaching the very outcome the FTCA seeks to prevent—holding the United States liable for a constitutional tort—thus effectively circumventing the statute's limitations. *See Blanchard v. County of Los Angeles*, No. 9:19-cv-02438 JVS (DFM), 2022 WL 17081308, at *3 (C.D. Cal. Aug. 25, 2022). The Court is thus unwilling to expand the very essence of the FTCA, which provides a limited waiver of sovereign immunity, to include state constitutional claims that overlap with federal constitutional claims, as doing so would undermine the purpose of the FTCA.

This strategy to sidestep the FTCA's limitations is apparent in the present case. Here, Plaintiff's Bane Act claim is based on Plaintiff's right to be free from actions damaging his family integrity in violation of Article I, Section 1 of the California Constitution, which is substantively equivalent to the Due Process Cause of the Fourteenth Amendment. *See Moore v. City of East Cleveland, Ohio*, 431 U.S. 494, 503 (1977) (finding that the Fourteenth Amendment "protects the sanctity of the family"); *see also Wallis v. Spencer*, 202 F.3d 1126, 1136 (9th Cir. 2000) (explaining that parents and children have constitutional rights protected by the Fourteenth Amendment to "not be separated by the state without due process of law except in an emergency"). While Plaintiff does not explicitly base his claim on a federal constitutional right to family integrity, this does not negate the existence of an overlap between federal and state constitutional claims. "Allowing [Plaintiff] to bring a Bane Act claim based on a 'substantively equivalent'

---

No. 3:20-cv-01752-WQH-LL, 2021 WL 615045, at *3–4 (S.D. Cal. Feb. 16, 2021). In reaching their conclusion, these cases primarily rely on *Xue Lu*, 621 F.3d at 945–46. However, *Xue Lu* did not address the issue of whether a Bane Act claim alleging a violation of the California Constitution may serve as the basis of an FTCA suit against the federal government as the claims in *Xue Lu* were predicated on violations of a federal statute, 28 U.S.C. § 242. *Id.* While *Xue Lu* simply "concluded that the FTCA allows Bane Act claims predicated on a violation of a federal statute, it did not suggest that the FTCA waiver extends to Bane Act claims deriving from constitutional violations." *Mossbrooks*, 788 F. App'x at 460. Thus, the Court finds the cases cited by Plaintiff unpersuasive, as they do not address the dispositive issue at hand—whether a Bane Act claim based on a state constitutional right that overlaps with a federal constitutional right is viable under the FTCA.

provision of the California constitution would in effect permit [him] to sue the federal government for a [Fourteenth Amendment] violation, which is precisely what is prohibited." *See Blanchard*, 2022 WL 17081308, at *3; *see Delta Savings Bank v. United States*, 265 F.3d 1017, 1026 (9th Cir. 2001) (prohibiting skirting the FTCA's requirements by asserting liability based on a negligence per se cause of action that relies on federal law as the source of duty, which creates an impermissible "end around" the FTCA's limitations).

Because Plaintiff's claim is based on a state constitutional right that overlaps with a federal constitutional right, Plaintiff's FTCA claim is not cognizable. Accordingly, Plaintiff has not established subject matter jurisdiction, so the Court **GRANTS** Defendant's Motion to Dismiss Plaintiff's fifth cause of action **WITHOUT PREJUDICE** and **WITHOUT LEAVE TO AMEND**. *Klamath-Lake Pharm. Ass'n.v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1292–93 (9th Cir. 1983) (noting that while "leave to amend 'shall be freely given when justice so requires' . . . futile amendments should not be permitted").

## II. Bivens Claims

Defendant also moves to dismiss the fourth and sixth causes of action brought under the United States Constitution for failure to state a viable *Bivens* claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] *See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). In Plaintiff's Opposition, Plaintiff agrees to dismiss the sixth cause of action, the Fifth Amendment *Bivens* claim, and joins the Defendant's request for its dismissal. Opp'n at 3. As Plaintiff has agreed to dismiss the sixth cause of action, the Court will only discuss Plaintiff's fourth cause of action.

In the present case, Plaintiff asserts claims for violations of his rights under the U.S. Constitution. As an initial matter, the United States has not waived sovereign immunity

---

[2] To the extent the Parties mistakenly refer to the *Bivens* claims as Claims V and VI in their briefing on the Motion, the Court preserves the numerical designation given to the Claims in Plaintiff's Complaint, which are Claims IV and VI.

for constitutional tort claims. *See Meyer*, 510 U.S. at 477–78 ("[T]he United States simply has not rendered itself liable . . . for constitutional tort claims."); *see also Jachetta v. United States*, 653 F.3d 898, 904 (9th Cir 2011) ("Although these claims may be characterized as constitutional torts, they are not actionable under the FTCA because any liability would arise under federal rather than state law. Accordingly, the FTCA does not provide a waiver of sovereign immunity for these claims.").

However, a claim that individual federal officers violated an individual's constitutional rights may be brought under *Bivens*, as a *Bivens* action is a judicially created remedy designed to provide individuals with "an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001). At a minimum, a plaintiff seeking to assert a *Bivens* claim must establish that he was deprived of the rights secured by the Constitution or laws of the United States and that the defendants who allegedly deprived him of those rights acted under the color of federal law. *Bivens*, 403 U.S. at 397.

If a plaintiff alleges a violation of the United States Constitution, the Court engages in a two-step inquiry to determine whether to permit a *Bivens* claim: *first*, it asks "whether the case presents 'a new *Bivens* context,'" i.e., whether it differs "meaningfully" from the three cases in which damages actions have previously been recognized; *second*, if the claim arises in a new context, the Court asks whether any "special factors counsel[] hesitation" suggesting that Congress is better equipped than the Judiciary to "weigh the costs and benefits of allowing a damages action to proceed." *Egbert v. Boule*, 596 U.S. 482, 492 (2022) (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 136 (2017)); *Abbasi*, 582 U.S. at 136.

Since *Bivens* was decided, the Supreme Court has expressly recognized an implied cause of action in only three types of cases: (1) *Bivens* itself, which recognized a cause of action for a violation of the Fourth Amendment's right against unreasonable searches and seizures; (2) *Davis v. Passman*, 442 U.S. 228 (1979), which recognized a claim for gender discrimination in the employment context under the Fifth Amendment's Due Process Clause; and (3) *Carlson v. Green*, 446 U.S. 14 (1980), which recognized a claim against

prison officials for inadequate medical care in the prison context under the Eighth Amendment.

The Supreme Court's delineation of these precise contexts, and subsequent decisions, have reinforced that only these specific contexts are appropriate for a *Bivens* action. *See, e.g.*, *Bush v. Lucas*, 462 U.S. 367, 390 (1983); *United States v. Stanley*, 483 U.S. 669, 671–72 (1987); *Wilkie v. Robbins*, 551 U.S. 537, 547–48 (2007). Courts have been cautioned against attempting to "expand[] the Bivens remedy" beyond these established contexts. *Abbasi*, 582 U.S. at 135 (citing *Iqbal*, 556 U.S. at 675); *see also Egbert*, 596 U.S. at 483. Consequently, Plaintiff argues that the wrongful detention of Romero falls within one of the recognized *Bivens* contexts, specifically the context set out by *Bivens* itself. In contrast, Defendant argues that its actions fall outside the three recognized *Bivens* contexts.

### A. New Context

First, the Court must determine if the case differs meaningfully from prior *Bivens* cases decided by the Supreme Court to assess whether a new *Bivens* context exists. *Abbasi*, 582 U.S. at 139. The Court in *Abbasi* did not provide an exhaustive list of differences that are meaningful enough to make a given context new, but noted the following examples:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 140. The Court further recognized that some differences "will be so trivial that they will not suffice to create a new *Bivens* context." *Abbasi*, 582 U.S. at 149. Yet importantly, a finding of a "modest extension" in cases with "significant parallels" to the three previously recognized *Bivens* claims would still amount to a meaningful distinction that would represent a "new" context. *Abbasi* 582 U.S. at 147.

Turning to Plaintiff's Fourth Amendment claim against unknown CBP and USMS officers, the Court finds the claim arises in a new context because it is substantially and meaningfully different from the three types of cases in which the Supreme Court has recognized a *Bivens* remedy.

With respect to Plaintiff's Fourth Amendment claim, the example case against which the Court must evaluate Plaintiff's claim consists of a Fourth Amendment "claim against FBI agents for handcuffing a man in his own home without a warrant" while carrying out routine police duties. *Abbasi*, 582 U.S. at 140; *see Bivens* 403 U.S. at 388. Here, Plaintiff's claim involves "a wrongful arrest and detention of a U.S. citizen crossing the U.S.-Mexico border" conducted by USMS and CBP, implicating meaningful differences as to the individual's expectation of privacy. *See Mejia v. Miller*, 61 F.4th 663, 668 (9th Cir. 2023) (concluding a meaningful difference existed where the events did not occur in or near the plaintiff's home, and instead on public lands where the plaintiff had no reasonable expectation of privacy). Since Plaintiff's wrongful arrest and detention took place in a context where the individual's reasonable expectation of privacy is reduced, particularly at the U.S.-Mexico border, a meaningful and nontrivial distinction is created between the present claim and the recognized *Bivens* contexts. Thus, even though Plaintiff asserts a Fourth Amendment cause of action that "parallels" the one recognized in *Bivens*, merely invoking the same constitutional provision does not, by itself, establish the "significant parallels" required for the Court to determine that the claim arises in the same context previously recognized in *Bivens*. *Hernandez v. Mesa*, 589 U.S. 93, 103 (2020) ("A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized.").

Moreover, Plaintiff's Fourth Amendment claim involves two new categories of defendants—CBP and USMS officers—who operate under a different legal mandate than the agents in *Bivens*. Courts have routinely distinguished *Bivens* based on the particular class of federal agents involved. For instance, before reaching the Supreme Court, the Ninth Circuit in *Egbert* held that where a border patrol agent allegedly used excessive force

against the plaintiff, the Fourth Amendment claim was a "'modest extension' in a new context" because the officer was a border patrol agent rather than an FBI agent. *Boule v. Egbert*, 998 F.3d 370, 387 (9th Cir. 2021), *rev'd on other grounds by Egbert*, 596 U.S. at 492. Similarly, because CBP and USMS officers fall outside of the scope of *Bivens*'s original context, Plaintiff's claim represents an expansion of *Bivens* that courts have been reluctant to recognize. *See, e.g.*, *Champaigne v. Davis*, No. 23cv3319 (EP)(JRA), 2024 WL 5039754, at *3 (D.N.J Dec. 9, 2024) (finding "that the U.S. Marshals Service differs from federal narcotics agents enough to create a new *Bivens* context[]"); *Robinson v. Heinze*, 655 F. Supp. 3d 1276, 1282 (N.D. Ga. 2023) (distinguishing in part because the defendants were U.S. Marshals in fugitive task force); *Edwards v. Gizzi*, No. 20-CV-7371 (KMK), 2022 WL 309393, at *7 (S.D.N.Y Feb. 2, 2022) (distinguishing officers including U.S. Marshals from federal narcotics agents).

Because this case differs from *Bivens* in two notable ways—(1) the interaction between Plaintiff and Defendants occurred near the U.S.-Mexico border, rather than a private residence, and (2) the Federal agents involved are employed by U.S. Customs and Border Protections and the U.S. Marshals, rather than the FBI—Plaintiff's claims present a new context.

Accordingly, Plaintiff's Fourth Amendment claim arises in a new *Bivens* context. Therefore, the Court proceeds to the second step of the inquiry, which asks whether any special factors counsel hesitation.

### B. *Factors That Counsel Hesitation*

Second, once the Court determines that a claim arises in a new context, it must then consider whether any "special factors counse[l] hesitation" in extending a *Bivens* remedy. *Hernandez*, 589 U.S. at 102; *see also Abbasi*, 582 U.S. at 136. The Ninth Circuit's approach first asks "whether there is 'any alternative, existing process for protecting' the plaintiff['s] interests." *Mirmehdi v. United States*, 689 F.3d 975, 982 (9th Cir. 2011) (quoting *W. Radio Servs. Co. v. U.S. Forest Serv.*, 578 F.3d 1116, 1120 (9th Cir. 2009)). "If there is such an alternative remedy, [the] inquiry stops." *Mirmehdi*, 689 F.3d at 982;

*see Egbert*, 596 U.S. at 493 ("[O]ur cases hold that a court may not fashion a *Bivens* remedy if Congress already has provided, or has authorized the executive to provide, 'an alternative remedial structure.'") (citations omitted).  Importantly, the Court does not analyze if the existing remedies provide complete relief or not.  *Id.*

Defendant argues that alternative remedies exist that preclude a *Bivens* remedy. These include "report[ing] any alleged misconduct by the U.S. Marshals to the Office of the Inspector General (OIG), supervisor, or the Department of Justice component's internal affairs office for referral to the OIG" and "[a]ggrieved parties . . . can report any alleged misconduct by CBP officers to the Inspector General of the Department of Homeland Security." Mot. at 9–10; 28 C.F.R. § 0.29c; 5 U.S.C. app. 3 § 81(f)(2)(B)–(C),(F)–(G); *see also* 6 U.S.C. § 345(a)(1), (4), (6).  Plaintiff has not addressed Defendant's argument on this issue.

Here, the existence of administrative remedies that Defendant has provided to protect plaintiffs like Romero, including grievance procedures, provide Plaintiff with remedies that would foreclose a *Bivens* claim.  *Pettibone v. Russell*, 59 F.4th 499, 457 (9th Cir. 2023) (holding the grievance procedure available in the case offers a similar right to an investigation and a similar possibility of corrective action foreclosing a *Bivens* claim); *see Egbert*, 596 U.S. at 494.

Furthermore, while the existence of alternative remedies forecloses relief under *Bivens*, the Court concludes that, even if this were not the case, there are nevertheless other "factors counseling hesitation." *Mirmehdi*, 689 F.3d at 982 (quoting *W. Radio Servs. Co.*, 578 F.3d at 1120).

"Even where Congress has given plaintiffs no damages remedy for a constitutional violation," resulting in a lack of legislative action, "the Court has declined to create a right of action under Bivens when doing so 'would be plainly inconsistent with Congress' authority in th[e] field.'" *W. Radio Servs. Co.*, 578 F.3d at 1120 (quoting *Chappell v. Wallace*, 462 U.S. 296, 304 (1983)).  In part, this rationale is derived from the fact that "*Bivens* suits implicate grave separation of powers concerns," thus courts have found that

1  "a decision to create a private right of action is one better left to the legislative judgment
2  in the great majority of cases." *De La Paz v. Coy*, 786 F.3d 367, 373 (5th Cir. 2015)
3  (quoting *Sosa v. Alvarez–Machain*, 542 U.S. 692, 727, 124 (2004)).  In such cases, "a court
4  must ask . . . 'broadly' if there is any reason to think that 'judicial intrusion' into a given
5  field might be 'harmful' or 'inappropriate,'" further inquiring "whether a court is
6  competent to authorize a damage action not just against" the present Defendant, but CBP
7  and USMS generally.  *Egbert*, 596 U.S. at 484.

   Courts have consistently held that "Congress is better positioned" to evaluate the costs and benefits of "creat[ing] new remedies in the border-security context." *Egbert*, 596 U.S. at 494; *Abbasi*, 582 U.S. at 136.  For instance, national security issues in border cases, like those in *Hernandez* and *Egbert*, typically preclude *Bivens* actions.  *See Hernandez*, 589 U.S. at 93; *Egbert*, 596 U.S. at 482.  In *Hernandez*, the Court declined to allow a damages remedy for an excessive-force claim against a Border Patrol agent who shot and killed a 15-year-old Mexican national across the border in Mexico as "cross-border shooting is by definition an international incident" and thus implicates foreign policy, which is governed by the political branches.  589 U.S. at 104.  The *Hernandez* Court found that "[s]ince regulating the conduct of agents at the border unquestionably has national security implications, the risk of undermining border security provides reason to hesitate before extending Bivens into this field." *Id.* at 108.  Similarly, in *Egbert*, the Court found that since the defendants were carrying out Border Patrol's mandate to "interdic[t] persons attempting to illegally enter or exit the United States or goods being illegally imported into or exported from the United States," the activities were "intimately related to foreign policy and national security[.]"  596 U.S. at 494 (quoting *Haig v. Agee*, 453 U.S. 280, 292 (1981)).  As such, these matters, which are typically within the purview of Congress, not the courts, should be left to legislative oversight.

   Thus, the Court, after considering whether it or the Legislative Branch is better equipped to decide whether existing remedies "should be augmented by the creation of a new judicial remedy[,]" concludes that Congress is better positioned to create remedies for

the wrongful arrest and detention of U.S. citizens at the intentional border. *See Egbert*, 596 U.S. at 493 (citing *Bush*, 462 U.S. at 368). The Court finds that the special factors counsel hesitation in extending *Bivens* to Plaintiff's claims, as the Supreme Court has consistently declined to recognize *Bivens* actions of incidents at the international border. *See Egbert*, 596 U.S. at 494 ("[A] *Bivens* cause of action may not lie where, as here, national security is at issue.").

Accordingly, since Plaintiff fails to state a *Bivens* claim upon which relief can be granted, the Court **DISMISSES** Plaintiff's fourth and six causes of action **WITH PREJUDICE** and **WITHOUT LEAVE TO AMEND**. *Klamath-Lake Pharm. Ass'n*, 701 F.2d at 1292–93 (noting that while "leave to amend 'shall be freely given when justice so requires' . . . futile amendments should not be permitted").

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss (ECF No. 5). Claim V of Plaintiff's Complaint is **DISMISSED WITHOUT PREJUDICE** and Claims IV and VI of Plaintiff's Complaint are **DISMISSED WITH PREJUDICE**. Claims IV–VI are all dismissed **WITHOUT LEAVE TO AMEND**. Because Plaintiff's Bane Act claim has been dismissed, the Court **GRANTS** Defendant's request to strike Plaintiff's request for attorney's fees under the Bane Act as Plaintiff's request is **MOOT**. Defendant **SHALL FILE** an answer or otherwise respond to Plaintiff's Complaint within fourteen (14) days of the date this Order is electronically docketed.

**IT IS SO ORDERED.**

Dated: March 24, 2025

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge